**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **PEDRAZA et al,** | 1:16-CV-09019 (PKC)(AJP) |
| **Plaintiff,** |  |
| v. | **SETTLEMENT AGREEMENT AND MUTUAL RELEASE** |
| **52 VAN FOOD CORP. et al,** |  |
| **Defendants.** |  |

IT IS HEREBY AGREED, by and between on the one hand, Plaintiff Tomas Pedraza ("Plaintiff"), and on the other hand, defendants 52 Van Food Corp. (d/b/a Blake & Todd), 47th Street Food, Inc. (d/b/a/ Blake & Todd Restaurant), 53rd Street Food LLC (d/b/a/ Blake & Todd Restaurant) (collectively, the "Corporate Defendants") and Alex Rachowin ("Rachowin" and, along with the Corporate Defendants, the "Defendants") ("Plaintiff" and "Defendants" shall hereinafter collectively be referred to as the "Parties"), for the good and sufficient consideration set forth below, as follows:

WHEREAS, Plaintiff commenced the above-captioned action (the "Action") asserting various claims under the Fair Labor Standards Act and the New York Labor Law (the "Wage Claims"); and

WHEREAS, Defendants deny any liability with respect to the Wage Claims; and

WHEREAS, the Parties desire to settle and finally resolve all claims and potential claims, including, but not limited to, the Wage Claims;

NOW THEREFORE, the Parties agree as follows:

1. Defendants shall pay to Plaintiff the gross settlement amount of one hundred ten thousand dollars ($110,000) (the "Settlement Amount"), payable to Plaintiff as follows:

   a. Payment of 36,666.69, less applicable deductions and withholdings, to Plaintiff, for which an IRS Form W-2 will be issued;

   b. Payment of 36,666.68, to Plaintiff, for which an IRS Form 1099 will be issued; and

   c. Payment of 36,666.63 to Michael Faillace & Associates, P.C., for which an IRS Form 1099 will be issued to Plaintiff and Michael Faillace & Associates, P.C.

      i. The checks referenced above in Sections 1(a) – (c) of this Agreement will be sent to Plaintiff's attorney at the following address: Michael Faillace & Associates, P.C., 60 East 42nd Street, Suite 4510, New York, NY 10165, Attn: Colin Mulholland, Esq.

      ii. Such checks shall be sent to Plaintiff's attorney within fourteen (14) days of the "Effective Date" of this Agreement (as defined in Section 17 of this Agreement

      iii. Plaintiff acknowledges that the payments referred to in Sections 1(a) and 1(c) of this Agreement are being paid in respect for his claim for unpaid wages, including claims for attorney's fees and costs; and the payments referred to in Section 1(b) of this

      Agreement are being paid in respect of his claims for liquidated damages, and in respect of any other claims (excluding the Wage Claims) that Plaintiff may have against Defendants, whether asserted in the above-captioned action or otherwise.

   iv. Plaintiff agrees to hold Defendants harmless, and indemnify the Defendants from any payments the Defendants may be required to make to any taxing authority resulting from the issuance of an IRS Form 1099 and any failure by Plaintiff to pay any taxes that are owed by Plaintiff related to said income.

  2. In consideration of the Settlement Amount, Plaintiff hereby releases Rachowin, the Corporate Defendants, their respective parents, subsidiaries and affiliates, together with their respective officers, directors, partners, shareholders, employees, agents, predecessors, successors and assigns (collectively the "Group"), from all claims (1) relating to unpaid, underpaid or improperly paid wages, salary, bonus, tips, spread of hours, commissions, fees, refunds, vacation time, sick time, personal time, comp time, clothing allowance, equipment allowance, tools of the trade allowance, expenses or any form of compensation, including claims under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., the Portal to Portal Act, 29 U.S.C. § 251, N.Y. Labor Law, N.Y. Code of Rules and Regulations, contract or common law; (2) relating to wage statements or employment related notices or record-keeping requirements; (3) relating to retaliation for protected activity concerning wages or hours; (4) relating to the negotiation and execution of this Agreement; and/or (5) asserted in the Action.

  3. Plaintiff represents that (with the sole exception of the above-captioned action) he has not filed or permitted to be filed against the Group, individually or collectively, any charges,

complaints or lawsuits with respect to the subject matter of this Agreement and claims released pursuant to this Agreement, and Plaintiff further covenants and agrees that he will not file or permit to be filed any lawsuits at any time hereafter with respect to the subject matter of this Agreement and claims released pursuant to this Agreement, except as may be necessary to enforce this Agreement. Nothing in this Agreement shall be construed to prohibit Plaintiff from filing a charge with or participating in any investigation or proceeding conducted by the Equal Employment Opportunity Commission ("EEOC") or a comparable state or local agency. Notwithstanding the foregoing, Plaintiff agrees to waive his right to recover monetary damages in any charge, complaint, or lawsuit filed by Plaintiff or by anyone else on his behalf. Except as otherwise provided herein, Plaintiff will not voluntarily participate in any judicial proceeding of any nature or description against any member of the Group that in any way involves the allegations and facts that Plaintiff raised or could have raised against any member of the Group in the above-referenced action.

4. Plaintiff agrees that he will not encourage or cooperate or otherwise participate or confer with any current or former employee of any of the Defendants or any other member of the Group, individually or collectively, or any potential plaintiff, to commence any legal action or make any claim against the Defendants or any other member of the Group with respect to such person's employment with Defendants or any member of the Group; provided, however, that nothing in this Agreement shall prohibit Plaintiff from cooperating with the EEOC or a comparable state or local agency. However, in the event that this Agreement is reviewed by any Court for approval, and such Court determines that this paragraph violates public policy, this paragraph shall be automatically null and void, without any further action by the parties.

5.      Plaintiff acknowledges and agrees that he previously voluntarily resigned his employment with the Corporate Defendants on or about September 12, 2016. Plaintiff further acknowledges and agrees that he will not, in the future, make any attempt to obtain employment in any capacity with any of the Corporate Defendants or any other business owned or controlled by Rachowin, and that should Plaintiff make any attempt to obtain such employment that his application may be disregarded and the Defendants will incur no liability. Should Plaintiff become employed by any of the Corporate Defendants or any other business owned or controlled by Rachowin at any time in violation of this provision, Plaintiff acknowledges and agrees that this provision shall provide sufficient cause and a legitimate, non-discriminatory/non-retaliatory business reason for the termination of employment of Plaintiff.

6.      Neither this Agreement nor anything contained herein shall be construed as an admission by Defendants of any liability or unlawful conduct whatsoever. The Parties acknowledge that Defendants have consistently denied, and continue to deny, any and all allegations of wrongdoing, including those asserted in the above-referenced action. The Parties acknowledge that Defendants are agreeing to enter into this Agreement solely to avoid the further expenses and burdens of continued litigation. This Agreement is not intended to be used, and shall not be used, as evidence or for any other purpose in any other action or proceeding, other than as evidence to enforce the terms of this Agreement and/or in connection with any claims that may arise based upon facts that occur after the execution of this Agreement.

7.      Each Party agrees to take all steps reasonably necessary to secure Court approval of this Agreement and the dismissal with prejudice of the above-captioned action.

8.      Defendants hereby release and forever discharge Plaintiff from any and all claims, promises, actions, obligations, debts, and liabilities of whatsoever kind or nature, Plaintiff may

now have or ever had against any of the Defendants arising out of or related to Plaintiff's employment at or separation from the Corporate Defendants.

9. The Parties agree that they will not issue or cause to be issued (and will instruct their respective counsel not to issue) any press release or communication to any media or media representative, including but not limited to the electronic, print, or digital media or social networking site, information regarding the above-referenced action, the claims asserted therein, the settlement of the above-referenced action and/or this Agreement, or the facts and events leading up to same, or the amount of money paid to resolve the action. If contacted by the press or other forms of media, including but not limited to any blogs or other social media websites, the parties and their counsel will state that the matter has been resolved to the satisfaction of all parties. Notwithstanding the terms of this section, and for the sake of clarity, the parties shall be free to make whatever disclosures they deem necessary and appropriate to their attorneys and financial and tax advisors, provided those disclosures are truthful.

10. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

11. The Parties, through their respective attorneys, have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

12. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this

Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

13. If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

14. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

15. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles.

16. This Agreement may be executed in two counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Fax or PDF/email signatures of any Party shall the full force and effect of an original signature.

17. This Agreement will become effective only upon its approval by the Court and an entry of a final order of dismissal of the above-captioned action with prejudice (the "Effective

Date"). If the Court does not approve this Agreement, the Parties will make good faith efforts to modify it so as to obtain Court approval.

18. Although Plaintiff's release of claims is strictly limited to those claims set forth in Section 2 above, Plaintiff represents and warrants that other than those claims which are being released pursuant to Section 2 above, Plaintiff is otherwise unaware of any other claims which he may have against Rachowin, the Corporate Defendants, or any other member of the Group.

19. **Plaintiff explicitly acknowledges that he has read this Agreement, fully understands it, had his attorney negotiate this Agreement on his behalf and explain it to him, and is voluntarily and knowingly signing this Agreement after consulting with his legal counsel.**

[SIGNATURE BLOCK BELOW]

ONLY=                                8

_____    12/01/2017
Tomas Pedraza                     Date


**47TH ST. FOOD, INC.**

_____    Date:_____

By:

**52 Van Food Corp.**

_____    Date:_____

By:

**53rd Street Food LLC**

_____    Date:_____

By:

**Alex Rachowin, individually**

_____    Date:_____

_____  12/01/2017
Tomas Pedraza                    Date

**47TH ST. FOOD, INC.**

By: _____   Date: 12/1/17

**52 Van Food Corp.**

By: _____   Date: 12/1/17

**53rd Street Food LLC**

By: _____   Date: 12/1/17

**Alex Rachowin, individually**

_____   Date: 12/1/17

ONLY=                    9